## ARKANSAS LOUISIANA GAS Co. *v.* BEN F. HARDGRAVE ET UX

5-5849　　　　　　　　　　　　　　478 S.W. 2d 772

### Opinion delivered April 3, 1972

[Rehearing denied May 8, 1972]

*Williams & Gardner,* for appellant.

*Edgar A. Woolsey,* for appellee.

LYLE BROWN, Justice. Appellees own a 293-acre tract utilized as a cattle ranch. Appellant procured an easement for a gas line across that part of the land used for pasturing and for meadows. The taking was forty feet in width and 2,593 feet long containing approximately 2.4 acres. A jury fixed just compensation at $3,500. Appellant contends that appellees' witnesses gave no reasonable bases for their opinions as to damages and that their testimony should have been stricken; and secondly, that there is no substantial evidence to support the verdict.

Since the substantiality of the evidence is attacked we shall need recite, in abstract form, the testimony of the landowners and their expert witnesses.

*The testimony of landowner Hardgrave.* He is thoroughly familiar with the land, having moved on it in 1946. Since 1957 he acquired all but fifty-three acres from his family. He has 205 acres he uses for grazing and pasture. It is fenced, ditched, and leveled, and contains two stock ponds. Part of his bermuda grass is cut for hay and another part is in winter pasture, rye grass and clover. He runs 100 head of cattle in the winter. It produces 200 bales of hay to the acre. He is familiar with land sales in that area. He valued the 205 acres, across which the pipeline runs, at $300 per acre before the taking, and at $275 an acre after the taking, a total difference of $7,000. Following the construction the rains washed out two ditches which begin on the right-of-way and run across the lands. The ditches are not sodded over and run up to three feet in width. There is a bank near the center of the pipeline which will have to be cut down and the entire right-of-way will have to be fertilized and sodded. The fair market value of the entire tract, as a unit, is affected by the easement.

*The testimony of appellees' expert witnesses.* (1) Hobart Yarbrough has lived in that county all his life, has owned real estate all his adult life, and for two years represented a national real estate company. He is a former circuit clerk and has done appraisal work in Johnson County and surrounding areas. He has been acquainted with appellees' land since 1921. He made an appraisal with respect to the easement. In making his appraisal he considered the entire tract as having a value of $250 an acre before the taking and $225 an acre after the taking. He introduced some comparable sales. He reduced the tract $25.00 per acre "because of the attractiveness it would have to a buyer when he goes and views it. He can see the condition of it and can see what he's got to do and that he would probably be spending twice that before he got through. I mean by the attractiveness, the pipeline itself. That the center of it is higher and has about enough slope to drain. When this water accumulates above and comes down it is going to cut across and cause the soil to take off down towards the Mississippi Delta . . . It has become less attractive because there is erosion accumulating along that pipeline . . . There were already little valleys

in there when the line was built this water comes on down there against and cut across and as it backed up down there in the valley it cut a ditch every time it rains it cuts a little further back uphill . . . It damaged the four acres by taking it out of existence and there is a ditch and you can't grow anything in a ditch . . . There is going to have to be a lot of dirt hauled and piled onto the erosion within the four acres . . . It's going to have to be reseeded and sowed over ditch lines . . . He's already lost a lot of hay on the meadow, has now lost and will lose a lot of grazing where those ditches are within the right-of-way. You've got erosion wherever it has occurred."

(2) *Witness Harold Lewis.* He is a real estate appraiser and president of the First Federal Savings & Loan Association of Clarksville. He considered the entire ownership north and south of the road, 293.97 acres, as a farming unit. He found the difference in market value to be $6,424.50. His difference in the before and after market value, acreage wise, was $20.00 per acre. "The basis of my reduction is, if I project what would happen if I exposed this property to the open market after the taking of this easement, I do not believe that the property has the same appeal to a purchaser that it would have had if he continued to have complete ownership of the complete parcel." There is a ridge where the pipeline was buried and the backfill was made. There is erosion present with ditches. Rocks are present which were not there before. It would cost a lot of money to repair those damages. In addition to the four acres which can be seen to have been damaged by erosion, the damage done to the balance of the acreage is that "it just won't sell for as much money." He has talked to owners who have experienced a pipeline across their property and knows that it just will not sell as well as if the pipeline were not present.

Witness Mary Giacomine, a photographer, presented ten pictures of the land which tended to corroborate the conditions that existed after the taking, as described by the expert witnesses and the landowner.

We conclude that the testimony of the witnesses presented a fair and reasonable basis for their value opinions

and constituted substantial evidence. Before the trial court would be warranted in striking all the after-value testimony (as requested by appellant) it would have to be evident that there was no reasonable basis whatever for the values. The values may be shown on cross-examination to be weak or questionable; that fact would merely go to the weight to be given the testimony. *Arkansas State Highway Comm'n. v. Sargent*, 241 Ark. 783, 410 S.W. 2d 381 (1967).

Affirmed.